UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND PENSION FUND and STATE-BOSTON RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NII HOLDINGS, INC., NII CAPITAL CORP., STEVEN M. SHINDLER, STEVEN P. DUSSEK, GOKUL HEMMADY, TERESA S. GENDRON, DANIEL E. FREIMAN, DONALD NEFF, KEVIN L. BEEBE, RAYMOND P. DOLAN, DONALD GUTHERIE, CHARLES M. HERINGTON, CAROLYN KATZ, ROSENDO G. PARRA, JOHN W. RISNER, JUAN R. FIGUEREO, GARY D. BEGEMAN, GOLDMAN, SACHS & CO., CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES INC., J.P. MORGAN SECURITIES LLC, MORGAN STANLEY & CO. LLC, CITIGROUP GLOBAL MARKETS INC., and HSBC SECURITIES (USA) INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:14-cv-00227-LMB-JFA<br><br>CLASS ACTION |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
THE GLOBAL INVESTOR GROUP FOR APPOINTMENT AS
LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF COUNSEL

Proposed lead plaintiff DeKalb County Employees Retirement Plan, Sheet Metal

Workers' National Pension Fund, TOBAM, SAS, and Wayne County Employees' Retirement

System (collectively, the "Global Investor Group"), respectfully submits this Memorandum of

Law in support of its motion for:  (1) appointment of the Global Investor Group as lead plaintiff

in this action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15

U.S.C. § 77z-1, 15 U.S.C. § 78u-4; and (2) approval of its selection of Motley Rice LLC ("Motley Rice") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel, and Craig C. Reilly, Esq. as liaison counsel pursuant to the PSLRA.[1]   As shown herein, the motion should be granted.

The PSLRA provides that within 90 days after publication of the notice, the Court must consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members.  15 U.S.C. § 78u-4(a)(3)(B).  Here, the Global Investor Group should be appointed as lead plaintiff because it:  (1) timely filed this motion; (2) has the largest financial interest in this litigation of any proposed lead plaintiff of which it is aware; and (3) will fairly and adequately represent the interests of the class.

## I.   STATEMENT OF THE CASE

The above-captioned class action lawsuit arises from alleged violations of the Securities Act and the Exchange Act by NII Holdings, Inc. ("NII Holdings" or the "Company"), its wholly-owned subsidiary NII Capital Corp. ("NII Capital"), certain of its executive officers, and certain other underwriter defendants (collectively, "Defendants").  As alleged in the Complaint on file before this Court, Defendants caused the prices of the Company's publicly traded securities to be artificially inflated during the period from February 25, 2010 through February 27, 2014 (the "Class Period") by issuing materially false and misleading statements that misled investors regarding the Company's business activities and financial condition.

---

[1]      There are parallel PSLRA provisions for claims made under the Securities Act of 1933 ("Securities Act") or the Securities Exchange Act of 1934 ("Exchange Act").  *Compare* 15 U.S.C. § 77z-1 and 15 U.S.C. § 78u-4.  Citations to PSLRA provisions in this Memorandum of Law apply to both the Securities Act and Exchange Act claims.

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA provides that the "most adequate plaintiff" is the Lead Plaintiff movant that has the "largest financial interest" in the relief sought by the Class and "otherwise satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The Global Investor Group respectfully submits that it is the "most adequate plaintiff," as defined by the PSLRA, because it has the largest financial interest in the relief sought in this action and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  As evidenced by the PSLRA certifications submitted herewith, the Global Investor Group suffered losses in excess of $9.5 million from its trading in NII Holdings securities during the Class Period.[2]

The Global Investor Group is comprised of sophisticated institutional investors that have experience serving as fiduciaries.  *See* Certifications, attached as Ex. A to the Reilly Decl.; *see also* Joint Declaration in Support of the Motion of the Global Investor Group for Appointment as Lead Plaintiff, attached as Ex. C to the Reilly Decl.  Moreover, the Global Investor Group is committed to vigorously pursuing the claims in the best interests of the Class.

In short, the Global Investor Group is precisely the type of investor Congress envisioned would lead securities class actions when it enacted the PSLRA.  *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist the courts").

---

[2]    *See* the Global Investor Group's Certifications Pursuant to Federal Securities Laws (the "Certifications"), attached as Ex. A to the Declaration of Craig C. Reilly in Support of the Global Investor Group's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Reilly Decl."); *see also* the charts of the Global Investor Group's transactions and losses, attached as Ex. B to the Reilly Decl.

Accordingly, the Global Investor Group respectfully requests that it be appointed as Lead Plaintiff and that its motion otherwise be granted.

## II.   STATEMENT OF FACTS

NII Holdings is a telecommunications company that, through its subsidiaries, operates wireless voice and data networks in Mexico, Brazil, and other countries in Latin America under the Nextel[TM] brand.  The Nextel wireless service features an idiosyncratic push-to-talk ("PTT") style communication option.  This PTT technology was key in distinguishing the Nextel brand from competitors, and was only supported on a type of mobile communication network called an Integrated Digital Enhanced Network, or iDEN, carried by towers specifically designed for that system.  The success of this effort to build a new network was widely seen as essential to the Company's future.  A crucial part of NII Holdings' network development strategy involved the construction of new WCDMA-service radio antenna co-location towers, some of which NII Holdings would sell and then lease back from purchasers.

The Complaint alleges that, during the Class Period, the Defendants violated the securities laws by misrepresenting and concealing the Company's rapidly declining business prospects and financial condition through positive financial reports and offering materials, and encouraging guidance.  The Defendants allegedly failed to disclose and misrepresent the following material facts, which were known to defendants or recklessly disregarded by them: (a) the Company's financial statements, as set forth in its periodic reports filed with the SEC, included, among other things, material misstatements regarding value-added taxes, income tax expense and liability, the capitalization of work in progress, and the classification of capital and operating leases that inflated the Company's reported financial performance in 2009 and 2010, and gave a false impression of the success of its effort to launch a new network; (b) the Company's efforts to transition away from its iDEN-based infrastructure were a failure from the

outset, causing its subscribers to defect in droves; (c) the Company's replacement network in key markets such as Mexico was not ready to support the service load created by the phase-out of the iDEN network; (d) the outlook for profitability at Comunicaciones Nextel de Mexico, S.A. de C.V. ("Nextel Mexico"), the Company's Mexican operating company, had dramatically deteriorated, but deferred tax assets (whose value is tied to projected profitability) held on Nextel Mexico's balance sheet and consolidated onto the balance sheet of NII were maintained at artificially inflated values; and (e) as a result of the foregoing, Defendants lacked a rational basis for their projections of the Company's performance and profitability.

The Class Period begins on February 25, 2010, when NII Holdings reported positive financial results for Q4 2009, and gave encouraging guidance for 2010.  The Company reported that it had leased valuable new long-life 3G radio towers, had valuable deferred tax assets, and was making progress in modernizing its network systems.  In reporting its financial results, the Company accounted for certain radio tower leases related to the development of the new network as operating leases.  By classifying these leases as operating leases rather than capital leases, NII Holdings represented that its efforts to develop its WCDMA network, which was required for continued success and future growth, were succeeding, yielding high-value, long-life network towers.  The Company's financial report also included substantial deferred tax assets.  Because such assets can be used only to offset future profits, their inclusion signaled to investors that the Company projected future profitability.  In response to these positive statements and the favorable appearance of its balance sheet, NII Holdings' stock price rose, increasing $0.42 per share to close at $37.87 per share on February 25, 2010.

During the period that followed, NII Holdings continued to claim that the development of its WCDMA network was progressing in a satisfactory manner, by, among other things,

representing that the value of the WCDMA towers that it built, sold, and leased back was high, and that the life of the towers was long enough to justify operating lease accounting treatment. NII Holdings also continued to report substantial deferred tax assets, and in so doing assured the public of its belief in future profitability.  These statements and other Class Period statements relating to the progress that NII Holdings was making in its efforts to modernize its network systems, its outlook for future growth and profitability, and the value of certain deferred tax assets were allegedly false and misleading.

The true state of the Company's obsolescent business model and declining prospects became clear through a series of disclosures.  First, NII Holdings revealed worsening prospects on August 7, 2012, with the issuance of a press release announcing its financial results for the quarter ended June 30, 2012.  In connection with these results, the Company cut its guidance for full-year 2012, including by reducing projected net subscriber additions by 400,000 and by decreasing projected consolidated operating revenue by $1 billion.  That day, the Company also filed its quarterly report on Form 10-Q for the quarter ended June 30, 2012 wherein certain of the Defendants disclosed that the Company's financial statements had, since 2009, included a number of errors relating to the valuation and/or classification of accounts for value-added taxes, income taxes, the capitalization of construction in progress, and operating and capital leases, among other things.  In response to these revelations, NII Holdings' stock price fell more than 24%, to close at $6.11 per share on August 7, 2012.

Soon thereafter, the Company announced that it would be publishing a restatement of its false financial reports.  On October 31, 2012, the Company disclosed that "the audited financial statements included in [its] Form 10-K for the year ended December 31, 2011 and the unaudited financial statements included in our Form 10-Q for the quarter ended March 31, 2012 should no

longer be relied upon," and that the Company would restate its financial information for the fiscal years ended December 31, 2011, 2010, and 2009.

Then, on February 5, 2013, the Company issued a press release providing disappointing preliminary results for the quarter and full year ended December 31, 2012, as well as weak guidance for 2013, including mid-single digit subscriber growth and consolidated revenues in the range of $5.7 to $5.9 billion.  In reaction to this partial disclosure of the financial effects of the Company's struggles to upgrade its systems, NII Holdings' stock price declined more than 8.6% and the market price of the Notes declined by over 9% that day.

Six months later, the Company disclosed that it had been overstating the value of deferred tax assets related to its Mexican operations.  On August 1, 2013, NII Holdings issued a press release announcing its financial results for the quarter ended June 30, 2013, including a $99.9 million valuation allowance related to the Company's deferred tax assets.  In response to this disclosure of the true value of NII Holdings' deferred tax assets and partial disclosure of its true outlook for profitability, NII Holdings' stock price fell almost 7% that day.

On October 31, 2013, the Company began to explicitly acknowledge the weaknesses in its network and modernization efforts.  NII issued a press release announcing disappointing financial results for the quarter ended September 30, 2013, including a net subscriber loss of 178,000, driven by a loss of 247,100 subscribers in Mexico.  In response, NII Holdings' stock price dropped 28.5% and the market price of the Notes declined by almost 11% that day.

Finally, on February 28, 2014, Defendants revealed the extent of the Company's failed efforts to implement its new systems and its true outlook.  NII Holdings published a press release with poor results for the full year and quarter ending December 31, 2013, including a larger-than-expected net loss.  NII also alerted investors that it "will have to significantly improve its

operating performance and consider other options to enhance its liquidity position to meet its financial obligations and fund its business in 2015 and beyond." Importantly, NII Holdings reported a net loss of 247,000 subscribers across all markets, including a loss of 390,000 subscribers in the Company's key Mexico market for the quarter. In reaction to these developments, NII Holdings' stock price declined over 55% and the market price of the Notes declined by more than 10% that day.

## III.    ARGUMENT

### A.    The Global Investor Group Should Be Appointed Lead Plaintiff

Pursuant to the PSLRA, the Court must appoint as lead plaintiff the "most adequate plaintiff" – presumptively, the "person or group of persons" with the largest financial interest in the litigation who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). The PSLRA establishes the procedure for appointing a lead plaintiff in each private action arising under the Act that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(i); *see In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 432-36 (E.D. Va. 2000) (explaining procedure). Furthermore, under the PSLRA, and as in *MicroStrategy*, two or more plaintiffs may be appointed as lead plaintiff.

In determining the "most adequate plaintiff," the PSLRA provides that:

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The Global Investor Group satisfies these criteria.

Here, as set forth in their Joint Declaration submitted herewith, the members of the Global Investor Group are sophisticated institutional investors with experience serving as fiduciaries, and are dedicated to maximizing the recovery to the Class members in this action. *See* Reilly Decl., Ex. C.  To that end, the members of the Global Investor Group will strictly supervise their chosen counsel, and have fully dedicated staffs of professionals to ensure that counsel acts only pursuant to their mandate.  *See* Joint Declaration, ¶¶ 6-8. The conclusion that the Global Investor Group has acted, and will continue to act, independently of counsel is bolstered not only by their significant financial stake in the litigation, but also by the fact that its members came together as a group on their own volition.  Prior to the filing of this Motion, the members of the Global Investor Group held a joint conference call to discuss the merits of the action against the Defendants, the benefits of working together jointly to prosecute the litigation, as well as the procedures and mechanisms the group has adopted to ensure the Class will benefit from its supervision of counsel.  *Id.*, ¶ 6. Because the Global Investor Group is a small, cohesive group of sophisticated investors with the incentive and experience to supervise counsel and achieve the best possible result for all class members, they are a proper lead plaintiff group under the PSLRA.

### 1.      The Global Investor Group Timely Moved for Appointment

The plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff.   15 U.S.C. § 78u-4(a)(3)(A)(i).   The relevant notice was published on *Globenewswire* on March 4, 2014.  *See* Reilly Decl., Ex. D.  Publication over a national business wire service satisfies the PSLRA notice provision. *See MicroStrategy*, 110 F. Supp. 2d at 432 (plaintiff "met his statutory notice obligation by issuing a press release containing the requisite

information to a national business news wire service"). Within 60 days after publication of the notice, any person who is a member of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). The Global Investor Group has timely filed this motion within 60 days after the initial notice, satisfying the first criteria.

### 2.      The Global Investor Group Has The Requisite Largest Financial Interest In The Relief Sought By The Class

During the Class Period, the Global Investor Group suffered a loss of approximately $9,592,472. *See* Reilly Decl., Exs. A & B. Accordingly, upon information and belief, the Global Investor Group has the largest financial interest in the outcome of this litigation. *See* 15 U.S.C. § 78u-4(a)(3)(B). Thus, the Global Investor Group meets the second criteria.

### 3.      The Global Investor Group Otherwise Satisfies Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(cc). Under the PSLRA, this inquiry "need not be as 'searching as the one triggered by a motion for class certification,' because the inquiry focuses solely on whether the person will be an appropriate class representative, and not whether the class may ultimately be certified." *MicroStrategy*, 110 F. Supp. 2d at 435 (citation omitted). Of Rule 23(a)'s four prerequisites to class certification, only two – typicality and adequacy – are generally addressed at the lead plaintiff stage. *See, e.g.*, *id.* at 435-36. The Global Investor Group meets the typicality and adequacy factors.

Rule 23 of the Federal Rules of Civil Procedure requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A claim is typical when each class member's claim arises from the same course of

events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Mills Corp. Sec. Litig.*, 2006 U.S. Dist. LEXIS 50485, at *10 (E.D. Va. May 30, 2006) (citation and internal quotation marks omitted).   Here, the Global Investor Group, which purchased its NII Holdings' securities in the open market, and certain debt securities pursuant to the Notes' offering materials, satisfies the typicality requirement.   The Global Investor Group, just like all other class members:  (1) purchased NII Holdings securities during the Class Period at artificially inflated prices; and (2) suffered damages thereby.[3]   Thus, the Global Investor Group's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events.

Rule 23 also provides that "the representative parties [must] fairly and adequately protect the interests of the class."   Fed. R. Civ. P. 23(a)(4).   Adequacy generally requires that the representative party and his counsel "possess the qualifications and ability to litigate the case," and "be free of any interests antagonistic to those of the class."   *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 541 (E.D. Va. 2006).   Here, the Global Investor Group is an adequate representative of the class because its interest in aggressively pursuing the claims against Defendants are clearly aligned with the interests of the members of the class, who similarly suffered losses because of Defendants' false statements to the market.   There is no antagonism between the Global Investor Group's interests and those of the other members of the class.   In addition, as demonstrated below, the Global Investor Group's proposed lead and local counsel are highly qualified, experienced and able to conduct this complex litigation in a professional

---

[3]       DeKalb County and Wayne County, municipal retirement schemes, suffered losses from the purchase of NII Holdings common stock.   SMWNPF, a defined benefit pension plan, suffered losses from the purchase of NII Holdings debt.   TOBAM, through its funds TOBAM Anti-benchmark US Equity Fund and TOBAM Anti-benchmark Global Equity Fund, suffered losses from the purchase of NII Holdings common stock.

manner.  To further demonstrate its adequacy, the Global Institutional Investor Group submitted Certifications and a Joint Declaration, affirming its understanding of the duties owed to Class members through its commitment to oversee and monitor the prosecution of this action in the best interests of the Class.  *See* Reilly Decl. Exs. A & C.  Through these Certifications and the Joint Declaration, the Global Investor Group accepts the fiduciary obligations it will assume if appointed Lead Plaintiff in this action.  *See id.*

## IV.   THE GLOBAL INVESTOR GROUP'S SELECTION OF LEAD AND LOCAL COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class it seeks to represent.  The Global Investor Group respectfully submits that its selection of Motley Rice and Robbins Geller together as Lead Counsel and Craig C. Reilly as Local Counsel should be approved.

Motley Rice has been appointed as lead counsel in numerous cases arising under the PSLRA and has repeatedly demonstrated its ability to represent the class's best interests.[4] Indeed, as the court noted in *In re NPS Pharms., Inc. Sec. Litig.*, No. 2:06-cv-570, 2006 WL 6627948, at *4 (D. Utah Nov. 17, 2006), Motley Rice has "expertise and experience in the prosecution of shareholder and securities class actions and, as a result, [is] adequate to represent the interests of the class."

Likewise, Robbins Geller has extensive experience prosecuting securities class actions and will more than adequately represent the interests of all class members as lead counsel.  *See, e.g.*, *Glaser v. VeriSign, Inc.*, No. 1:13-cv-00060, Order (E.D. Va. Apr. 12, 2013) (appointing Robbins Geller lawyers as lead counsel).  Indeed, Robbins Geller has been appointed as lead counsel in landmark class actions, including *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427 (S.D.

---

[4]     *See* Firm Resume of Motley Rice, attached as Ex. F to the Reilly Decl.

Tex. 2002) ($7.3 billion class recovery).  Robbins Geller thus possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors.[5]

Moreover, Motley Rice and Robbins Geller have prior experience jointly prosecuting securities fraud class actions as Co-Lead Counsel.  *See e.g., In re Medtronic, Inc. Sec. Litig.,* No. 0:13-cv-01739-JRT-FLN (D. Minn. Sept. 10, 2013) (granting approval of Motley Rice and Robbins Geller as Co-Lead Counsel), attached as Ex. E to the Reilly Decl.

Mr. Reilly is a member of the bar of the Court and has previously been approved as liaison counsel for the class in actions brought under the PSLRA.  *See, e.g*., *MicroStrategy*, 110 F. Supp. 2d 427.  Accordingly, the proposed counsel for the class should be approved.

## V.    CONCLUSION

For the foregoing reasons, the Global Investor Group respectfully requests the Court appoint it as Lead Plaintiff in this action pursuant to 15 U.S.C. § 78u-4(a)(3)(B), and approve its selection of Motley Rice and Robbins Geller together as Lead Counsel and Craig C. Reilly as Liaison Counsel.

Dated: May 5, 2014                                    Respectfully submitted,


                                                      */s/  Craig C. Reilly*
                                                      CRAIG C. REILLY (VSB # 20942)
                                                      111 Oronoco Street
                                                      Alexandria, VA  22314
                                                      Telephone:  (703) 549-5354
                                                      Facsimile:   (703) 549-2604
                                                      Email:       craig.reilly@ccreillylaw.com

                                                      *Proposed Local Counsel for the Global Investor Group*

---

[5]     *See* Firm Resume of Robbins Geller, attached as Ex. G to the Reilly Decl.

Marlon Kimpson
Badge Humphries
David P. Abel
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9450
Email:       mkimpson@motleyrice.com
             bhumphries@motleyrice.com
             dabel@motleyrice.com

*Proposed Lead Counsel for the Global Investor
Group*

Darren J. Robbins
Danielle S. Myers
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  (619) 231-1058
Facsimile:  (619) 231-7423
Email:       drobbins@rgrdlaw.com
             dmyers@rgrdlaw.com

*Proposed Lead Counsel for the Global Investor
Group*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on May 5, 2014.

> */s/  Craig C. Reilly*
> CRAIG C. REILLY (VSB # 20942)
> 111 Oronoco Street
> Alexandria, VA  22314
> Telephone: (703) 549-5354
> Facsimile:  (703) 549-2604
> Email:      craig.reilly@ccreillylaw.com
>
> *Local Counsel for the Global Investor Group*

# Mailing Information for a Case 1:14-cv-00227-LMB-JFA

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Elizabeth Anne Aniskevich**
  eaniskevich@cohenmilstein.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)